In the Matter of the Estate of SAMUEL THOMAS, Deceased.

Surrogate's Court, New York County, February 1, 1929.

*Nicoll, Anable & Nicoll* and *Laughlin, Gerard, Bowers & Halpin* [*Spotswood D. Bowers, Ernest L. Weiler* and *Walter G. Zorn* of counsel], for Robert Livingston Beeckman and others, as trustees.

*Robert F. Wagner* [*Simon H. Rifkind* of counsel], special guardian for Samuel F. Thomas and another.

*Charles A. B. Pratt,* for Harold E. Thomas.

*Baldwin, Hutchins & Todd* and *Reynolds, Richards, McCutcheon & Logan* [*Roger S. Baldwin* of counsel], for Lucy Cotton Ament and another, as ancillary executors, etc., of Edward R. Thomas, deceased.

*Roger S. Baldwin,* for Lucy Cotton Ament individually and as general guardian, etc., and others.

*John F. Couts,* for Elisabeth R. Thomas, individually.

*Edwards, Murphy & Minton* [*John McKim Minton, Jr.,* and *Franklin H. Mills* of counsel], for Robert Livingston Beeckman, individually.

*William W. Blatchford, Jr.* [*Robert G. Starr* and *Henry Wollman* of counsel], for Joseph H. Dodshon.

O'BRIEN, S. General Samuel Thomas died in 1903. He left an estate amounting to about $15,000,000. By his will duly admitted to probate he established four distinct and separate trusts: (1) The trust for his widow Ann Augusta Thomas, who is still living; (2) the trust for his son Harold Thomas, who is still living; (3) the trust for his daughter Eleanor Nancy Thomas, who married Robert Livingston Beeckman and who died in 1921 leaving no issue; and (4) the trust for his son Edward R. Thomas, *who died July 6, 1926.* This latter trust was to pay over the income to Edward R. Thomas in equal quarterly installments so long as he should live and upon his death to divide and set apart such shares so held in trust in as many equal parts or shares as said Edward R. Thomas should leave a child or children and issue of a deceased child him surviving, and to pay over one of such parts or shares to each of such children and to the issue of any deceased child, *per stirpes* and not *per capita.* *Edward R. Thomas, by whose life this trust was measured and who was one of the trustees under decedent's will, died July 6, 1926.* Pursuant to the terms of the will of Samuel Thomas, Archdeacon Dodshon was appointed substituted trustee to fill the vacancy created by Edward R. Thomas' death. The manner of his selection we shall shortly describe. In this accounting proceeding a question has been raised whether said substituted trustee is entitled to commissions upon the corpus of said Edward R. Thomas trust fund. His application for such commissions is opposed by his cotrustees Elisabeth R. Thomas and Robert Livingston Beeckman and supported by his cotrustee Ann Augusta Thomas. It may be noted here that all of these trustees are substituted trustees and were appointed pursuant to the directions of the will exactly as Archdeacon Dodshon was. Eleanor Beeckman, General Thomas' daughter, resigned as trustee and her husband, Robert Livingston Beeckman, was appointed in her place. Ann Augusta Thomas and George McCulloch Miller resigned and Henry T. Eldredge and Charles I. McBurney succeeded them. The latter died and was succeeded by Samuel Ricker, Jr. Mr. Ricker and Mr. Eldredge resigned and *Ann Augusta Thomas, decedent's widow, and Elisabeth R. Thomas, second wife of Edward R. Thomas, who are now acting as trustees with Robert Livingston Beeckman,* succeeded them. At this point it is appropriate to record several vital points in connection with decedent's will. (A) General Thomas gave his executors and trustees the power in their fullest discretion to sell any part of his estate, arbitrate claims by or against the estate, protect investments, pay assessments, etc. (Pars. 8 and 9 of the will.) (B) The language used in paragraph 3 of the will by which testator disposed of the residue is important in the consideration of our present question for he gave and devised the

residue *" to the executors and trustees of this my will, hereinafter named, or such of them as shall qualify and act thereunder, their successor and successors (swch executors and trustees, or such of them as shall qualify and act hereunder their successor and successors, being hereinafter referred to as ' said executors and trustees).' "* (C) Testator's clear and definite purpose to have at all times four trustees is evidenced by the careful and detailed manner in which he provided for the filling of vacancies in the groups of trustees. (Par. 11.) " In case of the death, resignation or failure to qualify and act hereunder of any of said executors or trustees *then it is my will and I hereby direct* that the remainder of said executors and trustees fill the vacancy in their number caused by such death, resignation, or failure to qualify and act, by selecting and naming by an instrument in writing, duly executed by the whole of them for the purpose, *another executor and trustee* to fill such vacancy, or in case of failure of such executors and trustees to fill such vacancy by such method, then it is my will and I hereby direct that application be made to the proper court to appoint an executor and trustee *to fill such vacancy and such executor and trustee so appointed by the act of the remaining executors and trustees or by the court to fill such vacancy, I direct shall have all the powers and authority of any of said executors and trustees named herein and appointed hereunder including the power to appoint another executor and trustee to fill a vacancy."* Three features of this provision should be especially noted: *First,* a fixed and definite purpose on testator's part to have at all times four executors and trustees evidenced by the details with which he makes the provision and the precaution he takes to have application made to the proper court should the surviving or active executors and trustees fail to act; *secondly,* the apparent care with which he provides that the power and authority of an executor and trustee selected should be the same as those possessed by those selecting him including the power to fill vacancies; and *thirdly,* the fact that in this provision there is no limitation as to the time when a vacancy is to be filled. This provision was manifestly drawn by a punctilious draftsman under directions of a testator who had clear ideas as to his purpose; they, it must be presumed, knew that questions of commissions would arise and could readily have foreseen the situation that would be presented by the death of an executor and trustee after the end of a life tenancy and before an accounting. Further comment upon this provision will be hereinafter made. As stated above, Edward R. Thomas died July 6, 1926; his death ended the life tenancy of the Edward R. Thomas trust fund and at the same time made vacant his trusteeship. The surviving trustees did not decline nor fail to fill this vacancy under the contention that

the selection was not necessary for the purpose of accounting for the Edward R. Thomas trust. Pursuant to the terms of the will they executed and filed an appointment of Archdeacon Dodshon to fill the vacancy. The instrument, after appropriate recitals including the provisions of the will and the death of Edward R. Thomas, continued as follows: " And WHEREAS, by reason of all the foregoing, there is now a vacancy in the executors and trustees named in the will of said Samuel Thomas, deceased,

" *Now, therefore*, the undersigned, under the power and authority conferred upon them by the said will of said Samuel Thomas, deceased, do select and name Joseph H. Dodshon as executor and trustee to fill the vacancy caused by the death of said Edward R. Thomas, such executor and trustee so appointed to have all the powers and authority of any of the executors and trustees named in said will, including the power to appoint another executor and trustee to fill any vacancy which may occur in the future.

" Dated, NEW YORK, *October* 13, 1926.

" ANN AUGUSTA THOMAS,
" ELISABETH R. THOMAS,
" ROBERT LIVINGSTON BEECKMAN."

Two of these trustees are now opposing the payment of commissions to the substituted trustee thus selected by them. Archdeacon Dodshon qualified on the same day, viz., *October 13, 1926.* The petition and accounting of the four executors and trustees, including Archdeacon Dodshon, were filed *May 26, 1927.* From the time of his appointment up to the present time he has acted as trustee not only of the continuing trusts created by said will but of the Edward R. Thomas trust. The contention of Archdeacon Dodshon's cotrustees expressed in other terms is that because he did not become a trustee until after the death of the life tenant, he is not entitled to commissions and this contention, as expressed, is based upon a bald, legal proposition which they assert that after the death of Edward R. Thomas there was no longer any trust of and over which the Archdeacon could be trustee. Their position is justified by neither (1) the statute covering trustees' commissions; (2) nor ordinary logic and common sense; nor (3) by the authorities.

*First:* The statute covering trustees' commissions is as follows (Surrogate's Court Act, § 285): " Commissions of executor, administrator, guardian or testamentary trustee. On the settlement of the account of any executor, administrator, guardian or testamentary trustee, the surrogate must allow to him his just, reasonable and necessary expenses actually paid by him, and if he be an attorney and counselor-at-law of this state, and shall have

rendered legal services in connection with his official duties, such compensation for such legal services as shall appear to the surrogate to be just and reasonable; and in addition thereto the surrogate must allow to such executor, administrator, guardian, or testamentary trustee for his services in such official capacity, and if there be more than one, apportion among them according to the services rendered by them respectively. For receiving and paying out all sums of money not exceeding two thousand dollars, at the rate of five per centum. For receiving and paying out any additional sums not amounting to more than twenty thousand dollars, at the rate of two and one-half per centum. For receiving and paying out any additional sums not exceeding twenty-eight thousand dollars at the rate of one and one-half per centum. For all sums above fifty thousand dollars at the rate of two per centum. * * * If the gross value of the principal of the estate or fund accounted for amounts to one hundred thousand dollars or more, each executor, administrator, guardian or testamentary trustee is entitled to the full compensation on principal and income allowed herein to a sole executor, administrator, guardian or testamentary trustee, unless there are more than three, in which case the compensation to which three would be entitled must be apportioned among them according to the services rendered by them, respectively. * * * "

The statute thus provides for compensation for all who act as testamentary trustees; it makes no distinction between trustees who qualify at the beginning or during the *life of the trust* or after the *termination of the life that measured the duration of the trust and before the trusteeship is ended.* (*Matter of Silliman*, 67 Misc. 27.)

*Secondly,* the position of the cotrustees is most illogical. They are, indeed, substituted trustees. They by their action taken under the terms of the will created this fourth trustee. From the moment when he qualified he had the same rights that they had to possession of the fund; he bore the same responsibility for the proper custodianship of said fund and its final distribution as they bore. Any negligence, any dereliction on their part and any loss sustained in said fund actively through or passively during his trusteeship might be made the subject of a surcharge against him. All of these considerations are a sufficient answer to the highly technical and erroneous reasoning of those who say "the trust was terminated with the death of Edward R. Thomas, ergo Archdeacon Dodshon could not have been appointed trustee of said trust and consequently he is not entitled to any commissions."

Other answers are available. As a matter of fact, the other trustees not only made him, nominated him a substituted trustee of the whole estate of Samuel Thomas but they utilized his services,

conferred with him, joined with him in accounting for the whole estate including the Edward R. Thomas trust fund. It is hardly in their mouth to assert that all these activities on his part as trustee in conjunction with theirs were an idle gesture or unncessary. He was appointed not to officiate only over the funds of the estate other than the Edward R. Thomas trust fund but in the same capacity and to the same extent as themselves. He joined with them, he shared the same responsibilities as they did during the period of his trusteeship, he acted with them in further administering the trust, he accounted with them, he helped them make distribution of said corpus and end the trusteeship. That a substitute trustee should be named to fill the vacancy caused by Edward R. Thomas' death was required by the provisions of the will. Samuel Thomas, the testator, desired it and made sure by definite and clear language that there should always be a fourth trustee. How absurd, then, it is to assert that such a substituted trustee should not receive the commissions provided for in the statute.

While the term of the trust was ended by Edward R. Thomas' death and the time arrived for the distribution of the fund in accordance with the terms of the will, the trusteeship did not end with Edward R. Thomas' death but continued until (a) a full and proper compliance with the terms of the will was had, (b) an accounting filed and judicially settled, and (c) a decree made discharging said trustees including the archdeacon from further responsibilities with respect to said trust fund. Archdeacon Dodshon having been duly nominated and appointed, and having properly qualified as trustee and having fulfilled all the obligations resting upon him, within the terms of section 285 of the Surrogate's Court Act, is entitled to commissions.

*Thirdly*, that the appointment of Archdeacon Dodshon by the surviving trustees after the death of the life tenant was legally effective in constituting him as a trustee of the Edward R. Thomas trust is supported by the authorities in this State. Before citing the most apt of these decisions, it is well to note here (1) that many of the authorities cited by the attorneys opposing this application are not in point for the reason that they relate to situations where the trusts in question were trusts of real estate and thus vitally different from trusts of personal property so far as this application is concerned; and (2) that opposing counsel also err in attempting to apply decisions rendered in proceedings where *applications were made to the surrogate* to name a substituted trustee to the present case *where the will required at all times four trustees*, and the surviving trustees, two of whom are now opposing this application, named the substituted trustee and not the court. The

following authorities amply support the position of the applicant: In *Yates* v. *Thomas* (35 Misc. 552, 555) Judge CLARKE held: "But, under the terms of the will creating the trust, it was not only to pay over the income during his life to the beneficiary named, but also 'upon and after his death to pay and divide the said equal fourth part or share among the same persons and in the same proportions as thereinafter directed with respect to the other three parts or shares'; as this provision has not been complied with, the trust is still unexecuted, and the surrogate had power, therefore, under section 2818 of the Code of Civil Procedure, to appoint plaintiff as successor to Mary Emma Cronly, the removed testamentary trustee." In *Deering* v. *Pierce* (149 App. Div. 10) the court, through the opinion by Judge McLAUGHLIN, held: "But such an action cannot be maintained and for the obvious reason that the death of the life beneficiary does not, in and of itself, sever the trustee's relation to the fund. He still continues as trustee thereof until the amount of the fund he holds and to whom he shall pay it has been judicially determined. Such determination can only be had after an accounting either in the Surrogate's Court or in a court of equity, in a proceeding instituted or an action brought for that purpose, to which all persons interested are made parties." (See, also, *Bank of New York & Trust Co.* v. *Hamersley,* 210 App. Div. 57; affd., without opinion, 240 N. Y. 558; *Matter of Laing,* 59 App. Div. 612; *Matter of Meehan,* 104 Misc. 219; *Matter of Vernon,* 77 id. 425; *Farmers' Loan & Trust Co.* v. *Pendleton,* 115 App. Div. 506.) I hold that the substituted trustee is entitled to commissions upon said trust fund as prescribed in section 285 of the Surrogate's Court Act. Proceed accordingly.